KAREN L. LANDAU, CSB 128728
2626 Harrison St.
Oakland, CA 94612
(510) 839-9230
(510) 839-0535 (fax)

Attorney for Defendant Curtiss Parker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     vs.<br><br>CURTISS PARKER,<br><br>           Defendant. | Case No.: CR 03-620-TJH<br><br>DEFENDANT'S REPLY TO GOVERNMENT'S POSITION RE SENTENCING<br><br>Date:  June 20, 2011<br>Time:  10:00 a.m.<br>Courtroom:  Hon. Terry J. Hatter |

**DEFENDANT'S REPLY MEMORANDUM RE SENTENCING**

### 1.  The Government Has Misstated Facts Regarding Mr. Parker's Original Sentence and Apparently Seeks to Undermine the Effect of the Stipulated Loss.

Preliminarily, defendant Parker notes that the government has misstated the facts regarding his initial sentencing.  The government relies on this misstatement to urge imposition of a sentence that is inconsistent with the advisory guidelines and effectively greater than the sentence originally imposed.  In its sentencing position, the government stated that originally, Mr. Parker's adjusted offense level was 23, with an advisory guideline range of 46-57 months.  Govt. Sen. Pos. at 31.  The government is simply wrong and this Court should reject the government's position.

At the original sentencing, the probation officer concluded that Mr. Parker's adjusted offense level was 24, and the advisory guideline range was 51-63 months.  The probation officer recommended a low end sentence of 51 months' imprisonment.  This Court departed downward by three months and imposed a sentence of 48 months.

On appeal, Mr. Parker argued that his loss and restitution were incorrectly calculated, because the total figure included losses that did not occur, namely approximately $600,000 due to investor Lloyd McGowen, and an approximate $50,000+ loss to investor Darmstadter.  The government conceded error and stipulated to removing these losses, both from loss for sentencing purposes, and for purposes of restitution.  The government stipulated that the loss attributable to Mr. Parker should be $1,179,129.36.  Govt. Sen. Pos. at 30.  All other calculations remaining the same, that loss figure reduces the advisory guideline level by one to 23 and the advisory guideline range to 46-57 months.  A sentence at the low end of the advisory guideline range, as recommended by the probation officer, would call for a sentence of 46 months' imprisonment, two months below the original sentence and five months below the low end of the higher, original guideline range.

Notwithstanding the change in the adjusted offense level and corresponding advisory guideline range, the government requests reimposition of the original sentence.  The government's recommendation effectively deprives Mr. Parker of any benefit from

the stipulation, which <u>reduced</u> his adjusted offense level and advisory guideline range.

The government also suggests that the stipulated loss, as to Mr. Parker, is mistaken.[1]  Opposition at 31.  Thus, while affirming its stipulation in word, the government devotes itself to undoing its effect.  The government's conduct breaches the stipulation agreement under which it agreed that Mr. Parker's loss would result in an upward adjustment of 11, not 12 levels.

A sentence commensurate with the parties' stipulation and the original sentence, without consideration of any other factors, would be 43 months' imprisonment.  That term is the low end of the new guideline range, less the three month departure originally granted.

### 2.  Factors Identified by Section 3553(a) Strongly Support a Time Served Sentence.

The government's sentencing memorandum is noteworthy for its disregard of most of Mr. Parker's arguments regarding the

---

1 The government appears to be suffering from buyer's remorse regarding the stipulated loss as to Mr. Parker.  That, however, does not relieve the government of its obligations.

3

sentence to be imposed.[2] The government has studiously ignored the significant sentencing disparity between the sentences it seeks for the defendants, and those it requested for the cooperators. It is difficult to comprehend how the cooperation of the leaders of the scheme -- no matter how extensive -- justifies their receipt of sentences that are approximately one-third of the sentences recommended for the indisputably less culpable broker defendants. None of them held organizational and supervisory roles in the offense and they profited far less. Furthermore, Mr. Parker was involved with Hampton Porter for only four months, far less time than either the cooperating defendants or the other brokers. The disparity in sentences combined with Mr. Parker's shortlived participation militates strongly in favor of a reduced sentence for defendant Parker.

Furthermore, the government has disregarded 18 U.S.C. § 3553(a)(1) & (2)(D). At this juncture, Mr. Parker has undertaken to rebuild his life after serving a significant period of incarceration,

---

[2] The government addressed the argument regarding abuse of trust; this matter is adequately addressed in the initial sentencing memorandum and defendant Parker will not repeat his arguments here.

and completing the RDAP program.  He is employed and attempting to address his longstanding problem of alcoholism.  He long ago accepted responsibility for his involvement in the offense, as conceded by the government.  Returning Mr. Parker to prison at this point would serve only to cause him to lose his job and housing, and interfere with his continuing participation in alcoholism treatment.  Mr. Parker's need for continuing treatment, and for reintegration into society will be far better served by a time served sentence, followed by supervised release. Thus, Mr. Parker's history and character, and his need for continuing treatment for his alcoholism strongly support a sentence of time served.

   The Bureau of Prisons takes the position that Mr. Parker has eight months and 22 days left to serve.  This remaining time is based solely on the BOP's revocation of Mr. Parker's credit, earned by completing the 500-hour Residential Drug and Alcohol Program.

   A sentence commensurate with that imposed originally, and considering the one level reduction based on the stipulated loss would be a sentence of 43 months' imprisonment.  A 43 month sentence would leave Mr. Parker with three months and 22 days left to serve.  Consideration of sentencing disparity, as between Mr.

Parker, and the organizers of the scheme, who cooperated and received sentences of 18 months or less, strongly supports a further reduction of a few months.  If the Court concludes that Mr. Parker did not hold a position of trust, then the advisory guideline range is 37-46 months, and Mr. Parker already has served more than the low end of the guideline range.  In any event, however, returning Mr. Parker to prison for three months and 22 days would serve nothing and, in fact, would be contrary to the purposes of sentencing identified in section 3553(a).

Accordingly, defendant Parker prays this Court to sentence him to time served and two years of supervised release.[3]

Dated:  June 14, 2011

Respectfully submitted,

/s/Karen L. Landau

_____

By:  KAREN L. LANDAU

---

[3] Mr. Parker has served the equivalent of more than one year of supervised release, because while released on bond by this Court, he was closely supervised by Pretrial Services.